And we'll move to our fourth case this morning, Terrell Esco v. City of Chicago. Ms. Garber. Excuse me. May it please the court. My name is Sarah Garber and I represent the plaintiff and appellant in this case, Terrell Esco. In this case, the district court erred in dismissing our Fourth Amendment claim for unlawful detention and our state law claim for malicious prosecution. We contend there were two main errors that were made. The first is the court's analysis of probable cause. In this case, the court found that because there was probable cause to arrest my client for possession of marijuana, which was found on him after he was stopped by the police, that that defeated any claim under the Fourth Amendment. That may be true as to a traditional 1983 false arrest claim, but it is not true as it relates to a claim based in an unlawful detention as a result of what we contend is a baseless prosecution. In this case, my client was not prosecuted for possessing marijuana. He was prosecuted for possessing a gun. And we allege in this case that there was no probable cause for the officers to believe that he did possess a gun. And under the court's logic, the fact that there was probable cause for something else, possession of marijuana, that that defeated our Fourth Amendment claim. We understand it may defeat the false arrest claim, but we contend it does not defeat the claim that is at issue in this appeal, which is the unlawful detention claim, count three. The other issue that we raise about the district court's decision is the judge's reliance on the video evidence. So in this case, we reference in our complaint that officers can be heard on the body-worn camera footage discussing that the plaintiff, Tralesco, was not actually the person they saw with the gun, that it was a different person. And there's also audio. Well, that refers to the person they saw with the gun in the video, the surveillance video officer. What's at issue here is what the videos show about what the responding officers saw on the street, which is your client with a gun stashes it under a car and takes off running. Doesn't that supply probable cause for the gun charge, especially after the gun was found where he had stashed it? So the video does not show my client with a gun at any point at any time. At best, the video shows an officer saying he's got the gun or I saw him with the gun or he threw the gun. Right, and then the officers give chase and it's him that they catch. Correct. And that's connected to the gun that they found where it was stashed by the person that they chased. That's the officer's version of events. It's not conclusive at all on the video that that's actually what happened. The officers see somebody running. He's running. Everybody runs because the officers approached a group of men and they went in to make an arrest, and many people ran, including my client. They ultimately chased my client, stopped him. They do not find a gun on my client. But that's what formed the basis for the gun charge, even setting aside the district court's misstep on the marijuana part of this. Just take that out of the equation. Correct. The basis was the officer's contention that he saw my client with a gun. Our position is that he is either wrong or lying about that. That's the basis of our complaint. That's what we allege. Wait a minute. Just a minute. Does the city need to prove that Esco actually had the gun? Police officers don't have to be correct in their assessments. They just have to be objectively reasonable, right? That's true, and our position is that the officers on scene knew that they saw somebody else throw the gun. My client was never seen with the gun. The other individual who was always in possession of the gun was seen with the gun. That is the individual who threw the gun and everybody ran. Then officers stop and arrest my client and contend that he was the one they saw with the gun. That's the allegations in the complaint. Obviously, that could be ferreted out in discovery, and a jury could choose to decide to believe or not believe that factual contention. But that is the allegation in the complaint, that the officers knew that that was not the person they saw with the gun and that they contended falsely that he was the person that they saw with the gun. The video does not dispute that. Perhaps it is evidence if you believe what the judge said was something like an excited utterance, that this officer must be telling the truth because of the sound of his voice. But that's not something that can be determined at this stage of the case, and it directly contradicts what we say happened. We say that the plaintiff was never seen with a gun, that he was not seen by this officer throwing a gun, that the officer saw a different individual throw a gun who did not look like the plaintiff, that it wasn't a mistake, it wasn't a reasonable mistake, it was a false statement in police reports that led to the charging of my client as opposed to the other person who actually had the gun. That's the allegations in the complaint. The only way that this can be dismissed on a motion to dismiss is if the video conclusively contradicts that, which would mean showing my client throwing a gun. Just showing an officer saying that he saw my client throwing a gun is the same as an officer contending, as he does in this case, that he did see the plaintiff. But the plaintiff says he didn't, and it's a dispute of fact, and it cannot be resolved by the video. The court made credibility determinations believing this officer, and to your original point about the officer I'm referring to who said, that's not the guy we saw, that that was referring to this earlier video. My position is that's not clear from the video. Yes, there was early surveillance, and yes, there is some discussion that they were watching a pod camera and saw the other individual. But when that individual comes onto the scene and is raising this issue, I believe it's apparent from watching the video that he's sort of saying, no, no, no, this isn't the right guy. Remember, we saw the other guy, and you're right, maybe he was saying I was referring exclusively to that earlier time, but that's not at all clear on the video. In fact, you know, there's this sort of back and forth between the officers that to me suggests that there was some concern by some of the officers that this wasn't the proper person that was being stopped. I believe that's a fair read of the video. The judge did not agree with that read of the video, but I don't think it's by any means conclusive in that regard. If the video showed my client throwing a gun, that would be conclusive, and the lawsuit should be dismissed, but it doesn't. It shows my client running far ahead of an officer in the dark, and then the officer saying, this is the guy I saw with the gun, this is the guy I saw with the gun. Well, would you agree that the body camera evidence is mostly being used as audio evidence, in other words, to demonstrate what the officer said and thus what they knew at the time. The visual, which is often pretty tricky, you know, in these, is not as relevant other than to see who is speaking. And of course, on a motion to dismiss, the question is, what a reasonable officer could have known at the time of arrest. And it seems as if the officers reasonably thought that he was the one who threw the firearm. You know, we don't need to use the video to prove he was holding the gun, only to determine whether a reasonable police officer would have reasonably believed he was the one that had the gun and discarded it. And then, you know, as you well know, we look at the situation through the eyes of the reasonable officer. Respectfully, I don't think a reasonable officer would believe that under these circumstances because of what took place. Another person was seen with a gun, that person was always seen with a gun, the police approach, that person throws the gun, everybody runs, and then my client is stopped. That's our version of events. If the police officer, one officer says, that's the guy with the gun, another officer says, no, wait a minute, that's not who we saw with the gun, and it's left to interpretation. This would be ferreted out in a deposition and, you know, addressed what everybody meant, what they were thinking, who they were referring to. The video is very brief snippets of moments in the course of an arrest. But what I believe it shows is that at the moment of arrest, officers on scene are in disagreement about what's going on. Otherwise, they wouldn't be speaking up and saying things like that. If it was clear that my client had the gun or that it was reasonable to believe he had the gun, another officer would not be heard raising and initiating a conversation about, hey, what are you doing, that's not the guy. And I understand it can be interpreted differently, but that's our contention about what went wrong at the district court level. The district court took a very difficult to interpret snippets of, you know, body camera footage and made a determination that one officer on the video was speaking the truth, that that person was the most credible, that what they're saying is the truth, and that's in contradiction to what the plaintiff alleged in this case. I would ask that your honors reverse the dismissal of the claim and allow it to go forward, and I know I'm eating into my rebuttal time, so I would ask to reserve the remaining time. Thank you. That's fine. Thank you. Mr. Morrell. Thank you, Your Honor. May it please the court. ESCO's complaint alleged that police body camera footage from the arrest confirmed he was not the individual in possession of the gun, and the officers knew that he was not the individual who possessed the gun even as they arrested him, but the body camera footage refutes rather than supports ESCO's allegations. The video showed there was never a conversation among the officers stating someone else threw the gun. Rather, the video shows multiple officers were unwavering in their independent belief that ESCO was the person they personally witnessed toss the firearm. Now, just to clarify a point in the record, the statement that was said in that exchange they're talking about with the pod surveillance cameras is, quote, that's not the same guy that they were looking at with the cameras. So I don't think there's any dispute that they were talking about what was seen in the cameras, not what was seen in person. Now, importantly, there were two officers, at least, who witnessed the throwing of the gun, and they were separated immediately afterwards. They did not meet up again until each had separately identified ESCO to a distinct group of officers. Therefore, to match ESCO's alleged theory that the officers knew someone else threw the gun with what we see in the footage, the officers would have either needed to coordinate a lie in the split second after they saw the gun thrown, but before they were separated while avoiding it being detected on body cameras, or somehow independently come to the same decision to lie to their fellow officers and falsely accuse ESCO as he was being arrested, hoping that another officer they couldn't coordinate with would decide to tell the exact same lie. Can we resolve this issue on the pleadings with the aid of the videotape? Yes. This work can certainly resolve it on the pleadings with the aid of the videotape. The body camera footage doesn't show Mr. ESCO with a gun. It doesn't show who tossed the gun under the car. It shows, I mean, it's valuable for its audio. As has been discussed, you can hear the responding officer who appears to be closest to the events, you know, in terms of distance, saying he's got a gun or he threw a gun, something like that, and then everybody runs and the officers give chase, and that particular officer finds the gun. So there's at least two problems with their allegations after you review the video. One is that we believe that the video has established probable cause, which is based on a totality of the circumstances and doesn't need any specific piece of information, such as having it visually captured on the video of the gun in his hand. But beyond that, they also need to prove to be able to attribute the prosecution, the post-legal process prosecution detention to the officers, that they lied to the prosecution. So when you see the videos, in their opening brief they don't even, or in the reply, they never acknowledge that there was actually two different officers, Officer Segovia and Officer Lopez, and they independently identified ESCO after witnessing him throw the gun, even though they were in separate locations, had no opportunity to discuss who they thought threw the gun, and were ascribing what they saw to a different group of officers. Specifically, Officer Lopez said to the officers at the scene of his arrest that ESCO was the one that tossed the gun, while Officer Segovia said near where the gun was thrown that ESCO, quote, the guy that ran, that they grabbed, he's the one that put the gun under the car. Are you referring to the malice element of the malicious prosecution claim? No. What I'm referring to is the fact that to be able to attribute the malicious prosecution to the officers after a guerrilla scenario, after the prosecutors decide to pursue the case, you have to be able to prove that the officers lied to the prosecutors, thus were responsible for promulgating the proceedings. You can see in the state law context in Allen v. Berger, it says the commencement or continuance of a prosecution may be attributed to police officers if they, quote, make a knowingly false report to the prosecutor, or this court has said in Reed v. City of Chicago, because the state's attorney, not the police, prosecutes a criminal action, there needs to be knowingly statements made by the officers to the prosecutors. Something more than a mere mistake. Exactly. Right, but can that be worked out at the pleading stage? Yes, I believe so, because it is a completely implausible story when you have these two officers in, like, we're dealing with about 60 seconds to 2 minutes after the events in question. While they're out of breath, humped up on adrenaline, it is implausible that they separately decided to lie to their own fellow officers about what they saw, hoping that an officer that they could not coordinate with, because one was at the scene of his arrest, one was at the scene of where the gun was retrieved, that they would happen to tell the exact same lie. And the fact that you have these two officers who didn't coordinate with each other, couldn't because they were in separate locations, the idea that they would both tell the exact same lie to their fellow officers a minute after the events in question is an implausible story in light of the videos. And to talk about that one exchange, that really is the entire basis of Appellant's case about the pod surveillance camera. That is the only factual allegation that they put in their complaint, that the police knew they were arresting the wrong person. It's that one exchange. However, as your honors have identified, the pod camera showed only what occurred before the events in question, but Esko was not arrested or prosecuted based on what he was seeing in the pod surveillance camera before the officers witnessed in person. Esko's complaint misrepresents these statements, and if you just read his complaint, you would think that they were talking about officers questioning whether or not they saw someone other than Esko throw the gun, but that is not included in the conversation whatsoever. That's why the city submitted the footage with its motion dismissed, because the complaint misrepresents what the videos show. I mean, just imagine a scenario where police are responding to a potential crime committed by one individual, but once they arrive, they see a different individual committing a crime. If the police officers merely acknowledge that there were two different people involved, that acknowledgement in no way casts doubt on what the officers witnessed the second individual do. That's simply what we have here, and the district court correctly dismissed Esko's complaint. Now, there is a second argument in our brief about the favorable determination requirement for the state law claim, but the city is prepared to rest on its briefing, unless your honors have any questions on that point. Apparently not. Okay. For those reasons, the judgment of the district court should be affirmed. Thank you very much. Ms. Garber. Just briefly, your honors, counsel for the city is going on and on about what would be plausible and what could have happened and how much time they would have had to coordinate their stories or who was where or who was when. This is not something that can be decided on the pleadings. These are things that are not conclusively decided on the videos that have to be ferreted out in discovery. For them to say it's implausible that two officers on scene could tell the similar and untrue story, it's equally implausible from our perspective that a person who's been seen as the only person holding a gun seconds before this happens is now not the person throwing the gun, but my client is the person throwing the gun. We could go on and on about what may have happened or what's implausible from the facts. At this point, they keep talking about what I have to prove, but I don't have to prove anything now. I only have to plead facts. I have pled facts that support a viable Fourth Amendment claim and a viable state law malicious prosecution claim. The only issue is does the video conclusively contradict that, and I don't believe that it's fair to say that it can without making credibility determinations and without making leaps not in my favor that I don't think is appropriate at this stage. If this were a case were to go on in Scarborough, just in general terms, what kind of discovery would you want to take? What would you want to do? Obviously, they would take the deposition of my client who would talk about what really happened there, perhaps the other individuals that were on scene with my client who could talk about what happened there, could talk to the officers about their intention and meaning behind these statements, where they were positioned, as counsel indicated, what they could have overheard, what they saw before they got on scene, what they knew from other officers from pod camera footage, how there was any chance for somehow my client to be the person ending up with the gun given the factual scenario that's presented by the time stamps on the pod camera and then the time when he's being arrested when they've clearly seen someone else with the gun for a long period of time beforehand. If I may, with the Chief Judge's permission, one more question. Iqbal cases like that, they talk about the pleadings having to eliminate probable lawful activity. Have you done that in your complaint? I believe so. We contend that we lay out a factual scenario where someone else was seen with a gun and all of a sudden in a very short period of time my client is being seen with a gun, and that it is not reasonable to believe that that is what happened. I also have my client as a witness who would explain what happened and that it's not the version of events that the officers have told, and that happens in every single case like this where we have the plaintiff saying something, the officer's saying another thing, and we get to ferret that out in discovery, and ultimately a jury has to decide who's credible or not because the video does not conclusively eliminate that. This is not a situation where it's a fishing expedition as to what happened or there's no basis for the plaintiff's claim. The plaintiff contends he didn't possess this gun and never threw this gun and that he ran like everybody else. There's no evidence that he did have the gun. Basically your view is that you want us to focus on what the Chief Judge suggested, and that is, is this trial by complaint? I'm not sure. I apologize. I don't know what you mean by trial by complaint exactly. Well, trial by complaint I think is what you claim you got here, right? I guess what I'm saying is I think I filed a lawsuit alleging that the police officers misrepresented in their reports. And you had a district judge say to you, I've looked at your complaints and I've looked at the accompanying videotapes. It looks fine to me. You don't get a trial, right? Correct. Good. That's what I mean. That's trial by complaint, right? I see what you mean. Yes, the complaint has been held as the only evidence I have in the case to prove my allegations, and yes, I believe there would be a lot of additional evidence that would come out in discovery. You know, as it relates to the favorable termination specifically, you know, our complaint alleges that the criminal defense attorney put together a timeline and these video snippets and showed it to the state's attorney. The state's attorney communicated with the officers, watched and looked at what they had put together, and then dismissed the case. So this is not something that is open and shut by the video against me. It was considered by the prosecutor open and shut against the officers. So, you know, I think the defendants are asking me to prove the case at this point. Yes, I understand your point in referring to that now. I hadn't heard that turn of phrase. But I would ask that you allow the case to go back to the district court so that I can pursue the discovery in this case. Thank you. Thank you very much. Our thanks to all counsel. The case is taken under advisement.